JUSTICE NELSON
concurs.
¶40 I agree that prisoner transport is inherently dangerous for the reasons set forth in ¶¶ 23-25 of the Court’s Opinion. Importantly, this activity is made all the more dangerous when the government which *477 retains the transporter fails its duty of due diligence to investigate the contractor before hiring. This duty of due diligence, in my view, encompasses the government’s obligation to make sure that the contractor is insured, operates in compliance with applicable federal and state laws and rules, has a good service record, and utilizes employees who are competent, trained and professional-employees who are not burdened with personality traits or mental deficits that predispose them to cruelty and torture. The government, in fulfilling its own duty to transport prisoners, must not be permitted to hire any flyby-night or otherwise unqualified contractor for that purpose. Absolving the government from liability for doing so almost guarantees that, at some point, a prisoner or an innocent member of the public will be injured or killed by the incompetence, gross neglect or misconduct of the contractor and its employees in discharging their duties.
¶41 I cannot agree that, in this case, we are dealing with a simple automobile accident for which there was no fault or for which simple negligence was the cause. Nor do I agree that we are dealing with an accident caused by horseplay, however it might be characterized. Rather, this case involves a contractor whose employees, arguably, intentionally tortured the prisoners in their custody and care. It is alleged that the AEI guards, over an extended cross-country trip, refused to provide their charges with basic needs including adequate bathroom breaks. It is also alleged that the driver of AEI’s transporting vehicle intentionally swerved the vehicle so as to cause the prisoners to spill urine on themselves when they were forced by their guards to relieve themselves in whatever containers happened to be available in the back of the van. Opinion, ¶¶ 25-26. That the tragic crash (which resulted in fatal and non-fatal injuries) occurred as an apparent consequence of the van driver’s torturous conduct, removes this case from the realm of negligence and horseplay.
¶42 If the facts of this case are as alleged, then the conduct of AEI’s employees was little different than the treatment that some prisoners of war have been subjected to over the last decade. If, as a civilized society, we reject the torture of prisoners of war, then most certainly we should reject the torture of prisoners who are placed in custody as a result of the criminal processes of this State. Montana prisoners retain their right to human dignity[1] once taken into custody under the *478 authority and power of the State. The State and its governmental subdivisions must be held to a high standard in dealing with Montana prisoners. Indeed, in Walker v. State, 2003 MT 134, 316 Mont. 103, 68 P.3d 872 (a prisoner rights case), we determined that the dignity clause provided Montana prisoners with greater protection from government intrusion than does the United States Constitution. For example, we stated in Walker: TTjreatment which degrades or demeans persons, that is, treatment which deliberately reduces the value of persons, and which fails to acknowledge their worth as persons, directly violates their dignity.” Walker, ¶ 81 (quoting Mathew O. Clifford & Thomas P. Huff, Some Thoughts on the Meaning and Scope of the Montana Constitution’s ‘Dignity”Clause with Possible Applications, 61 Mont. L. Rev. 301, 307 (Summer 2000)). We also determined in Walker that “[t]he plain meaning of the dignity clause commands that the intrinsic worth and the basic humanity of persons may not be violated.” Walker, ¶ 82. The right of dignity is the only ‘inviolable” right in the Montana Constitution. The right is self-executing and is absolute. The government must not be permitted to blithely wash its hands of its failure to perform a due-diligence investigation of a prisoner-transport contractor before retaining it for the inherently dangerous task of interstate prisoner transport. Here, the State and County cannot simply disavow the allegedly appalling treatment of a Montana prisoner under circumstances which the State and County set in motion when it hired AEI with little or no prior due-diligence investigation.
¶43 I concur.

 A right guaranteed under Article II, Section 4 of the Montana Constitution (‘The dignity of the human being is inviolable.”).